UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MARK S. SHERMAN, | : | No. 3:15-cv-352 (MPS) |
|     Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| JAMES A. PLATOSH and | : | |
| BRYAN F. SEMBERSKY, | : | |
|     Defendants. | : | |

## Ruling on Motion to Dismiss

Plaintiff Mark Sherman alleges that Vernon Police Department officers James Platosh and Bryan Sembersky (the "Defendants") arrested him and forced him to enter into the passenger area of a small police cruiser, causing him pain and injuries. In Count One, Sherman sues the Defendants in their individual capacities and alleges that their actions constituted the use of unreasonable force in violation of the Fourth Amendment and 42 U.S.C. §§ 1983 and 1988. (Amended Complaint, ECF No. 24 at 1-4.) Sherman seeks compensatory damages, punitive damages, and attorneys' fees and costs. (*Id.* at 4.) In Count Two, Sherman sues the Defendants in their official capacities. (*Id.* at 5.) Defendants move to dismiss Count Two under Rule 12(b)(6) of the Federal Rules of Civil Procedure as insufficient to state a plausible claim for relief. (ECF Nos. 19, 28.) The Court GRANTS Defendants' motion and dismisses Count Two of the Amended Complaint.

### I.     BACKGROUND

The following facts are taken from the Amended Complaint and are accepted as true for the purpose of deciding Defendants' motion to dismiss.

Sherman is a resident of Vernon, Connecticut. (ECF No. 24 at 1 ¶ 3.) He is six feet, two inches tall and, at the time of the arrest, he weighed 260 pounds. (*Id*.) James Platosh and Bryan Sembersky are officers in the Vernon Police Department ("VPD"). (*Id*. at 1 ¶ 4.)

At approximately 7:30pm on September 29, 2012, the Defendants arrested Sherman in Vernon, Connecticut, on a motor vehicle charge and handcuffed his hands behind his back. (*Id*. at 2 ¶ 7.) Sherman alleges that, although other police vehicles "of the traditional Ford Crown Victoria type and model" were available at the time of his arrest, the Defendants used "a police patrol vehicle far smaller than a traditional police cruiser and obviously too small to accommodate a prisoner of [Sherman's] size." (*Id*. at 2 ¶ 8-9.) Defendant "Platosh opened the back door of the vehicle and instructed [Sherman] to 'get in.'" (*Id*. at 3 ¶ 10.) Sherman twice attempted "to place his left foot into the area between the front of the rear seat and the back of the front seat," and finally told Defendant Sembersky, "I will not fit." (*Id.*) Nevertheless, "Sembersky twice insisted that [Sherman] would fit while ignoring [Sherman's] concern that even the footing area appeared to be inadequate to accommodate [his] left foot." (*Id.*) "Realizing that . . . the [D]efendants were verbally forcing him to comply, [Sherman] entered the back seat area." (*Id.*)

> As he attempted to seat himself into the seat, the pain in both his wrists with the extremely tightened handcuffs was unendurable. Involuntarily, the plaintiff lay flat on his back, attempting to relieve the pain in his wrists. Because there was not enough room for the plaintiff's feet to align perpendicularly to the seat, the plaintiff was caused to suffer severe and unnecessary pain. He was high-centered over the seat divider, handcuffs compressing on his wrists, and in severe pain.

(*Id.*) Sherman alleges that the Defendants knew that he would suffer pain if he was forced to enter the small police vehicle, and "such pain was entirely unnecessary and unreasonable because of the availability of a Ford Crown Victoria police cruiser" to transport him. (*Id*. at 3 ¶ 11.) As a result of the Defendants' actions, Sherman alleges that he suffered pain and injuries

that "may be permanent in nature" and that "have curtailed [sic] his ability to work and enjoy the pleasures of life." (*Id*. at 4 ¶ 12.)

The Amended Complaint states that the Town of Vernon (the "Town"), "acting through its highest policy-setting officials for such matters, elected to replace its fleet of Ford Crown Victoria police cruisers with police patrol vehicles far smaller than a traditional police cruiser and obviously too small to accommodate prisoners of larger-than-average size," like Sherman. (*Id*. at 5 ¶ 7.) Sherman further alleges that the Town "knew that the result of that policy would be to make it impossible for the Town's police officers to transport larger-than-average prisoners without subjecting said prisoners to excruciating pain and the possibility of permanent physical injury, none of which was reasonable or necessary." (*Id*. at 5-6 ¶ 8.)

Sherman filed his complaint on March 9, 2015. (ECF No. 1.) Defendants filed a motion to dismiss Sherman's official capacity claims (Count Two) on May 4, 2015. (ECF No. 19.) The Court gave Sherman an opportunity to file an amended complaint to address the alleged defects discussed in the Defendants' memorandum of law. (ECF No. 21.) Sherman filed his Amended Complaint on May 23, 2015. (ECF No. 24.) Defendants renewed their motion to dismiss on June 26, 2015 (ECF No. 28), and the Court denied Defendants' first motion to dismiss as moot. (ECF No. 29.)

### III. STANDARD

Under Fed. R. Civ. P. 12(b)(6), the Court must determine whether the Plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570. Under *Twombly*, the Court accepts as true all of the complaint's factual allegations when evaluating a motion to dismiss. *Id*. at 572. The Court must "draw all reasonable inferences in favor of the non-moving party." *Vietnam Ass'n for Victims of Agent*

*Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008). "When a complaint is based solely on wholly conclusory allegations and provides no factual support for such claims, it is appropriate to grant defendants['] motion to dismiss." *Scott v. Town of Monroe*, 306 F. Supp. 2d 191, 198 (D. Conn. 2004). For a complaint to survive a motion to dismiss, "[a]fter the court strips away conclusory allegations, there must remain sufficient well-pleaded factual allegations to nudge plaintiff's claims across the line from conceivable to plausible." *In re Fosamax Products Liab. Litig.*, 2010 WL 1654156, at *1 (S.D.N.Y. Apr. 9, 2010).

**IV.    DISCUSSION**

Defendants argue that Sherman's allegations against the Defendants in their official capacities are insufficient to state a plausible claim for relief under Section 1983. The Court agrees.

"In order to prevail on a claim against a municipality under [S]ection 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008) (citing *Monell v. N.Y. Dep't of Soc. Servs.,* 436 U.S. 658, 690-91 (1978)). The fifth element reflects the notion that "a municipality cannot be made liable under Section 1983 for acts of its employees by application of the doctrine of *respondeat superior.*" *Roe*, 542 F.3d at 36 (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986) (internal quotation marks omitted)). A municipality may be "held liable if a plaintiff proves the municipality violated a federally protected right through (1) municipal policy, (2) municipal custom or practice, or (3) the decision of a municipal policymaker with final policymaking authority." *Zherka v. DiFiore,* 412 Fed. App'x. 345, 348 (2d Cir.2011) (citing *Monell,* 436 U.S.

at 695). A plaintiff may satisfy the "policy or custom" requirement by alleging one of the following:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Brandon v. City of New York,* 705 F.Supp.2d 261, 276–77 (S.D.N.Y.2010) (citations omitted). "[T]o survive a motion to dismiss, Plaintiff cannot, through conclusory allegations, merely assert the existence of a municipal policy or custom, but must allege facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists." *Masciotta v. Clarkstown Cent. Sch. Dist.*, No. 14-CV-7128 KMK, 2015 WL 5730629, at *14 (S.D.N.Y. Sept. 30, 2015) (internal quotation marks and citations omitted).

Sherman alleges that the Town, "acting through its highest policy-setting officials for such matters, elected to replace its fleet of Ford Crown Victoria police cruisers with police patrol vehicles far smaller than a traditional police cruiser and obviously too small to accommodate prisoners of larger-than-average size," and the Town "knew that the result of that policy would be to make it impossible for the Town's police officers to transport larger-than-average prisoners without subjecting said prisoners to excruciating pain and the possibility of permanent physical injury, none of which was reasonable or necessary." (ECF No. 24 at 5-6 ¶¶ 7-8.) These conclusory allegations are devoid of sufficient facts to support an inference that the Town has a custom or policy that resulted in the violation of Sherman's constitutional rights.

As Defendants point out, Plaintiff does not state sufficient facts to allege that a policy of using a certain type of police vehicle is unconstitutional on its face. *See Amnesty Am. v. Town of*

*W. Hartford*, 361 F.3d 113, 125 (2d Cir. 2004) ("*Monell* established that alleging that a municipal policy or ordinance is itself unconstitutional is always sufficient to establish the necessary causal connection between the municipality and the constitutional deprivation, because an employee's act of enforcing an unconstitutional municipal policy may be considered the act of the municipality itself."). Sherman does not identify the make, model, or dimensions of the smaller police vehicles that were allegedly replacing the Town's "fleet of Ford Crown Victoria police cruisers." He does not allege any necessary connection between a use of force—or any other constitutionally regulated conduct—and the size of the back seat of a police vehicle. Nor does he allege facts suggesting that a policy of using smaller vehicles to transport large arrestees would necessarily, or even be likely to, lead to injuries. *See Kirkpatrick v. City of Los Angeles*, 803 F.2d 485, 492 (9th Cir. 1986) (strip search policy was not unconstitutional on its face because following the "policy would not necessarily lead to a violation of fourth amendment rights in any case."). While it is possible that transporting large arrestees in small vehicles could contribute to injuries, together with other factors such as the positioning of the arrestee, the way he was handcuffed, the positioning of the seats, and the length and nature of the ride, the Plaintiff has pled no facts to suggest that it would necessarily do so.

Sherman does not cite—and the Court has not found—any cases holding that the use of a particular size of police vehicle to transport an arrestee is unconstitutional. Citing *Simmons v. Cook*, 154 F.3d 805, 807 (8th Cir. 1998), an Eighth Amendment case, Sherman argues that "[n]o distinction can reasonably be drawn" between confining prisoners "in a police mini-cruiser and doing so in a prison cell the size of a closet or a coffin." (Plaintiff's Opposition Brief, ECF No. 30 at 4.) But unlike Sherman, an arrestee who claims violations of the Fourth Amendment, the wheel-chair bound inmates in *Simmons* were denied adequate food and medical care as a result

of their confinement in small prison cells, which the Eighth Circuit found was "objectively serious" under the Eighth Amendment. *Simmons*, 154 F.3d at 808 (during their thirty-two hour confinement, plaintiffs "missed four consecutive meals," and "were unable to have a bowel movement").

A custom or policy may also be unconstitutional as applied. *Amnesty Am.*, 361 F.3d at125-26. "[A] single instance of unconstitutional conduct by a mere employee of the State," however, is not sufficient to make such a showing. *Newton v. City of New York*, 566 F. Supp. 2d 256, 271 (S.D.N.Y. 2008); *see Jones v. Town of E. Haven*, 691 F.3d 72, 81 (2d Cir. 2012) ("isolated acts of excessive force by non-policymaking municipal employees are generally not sufficient to demonstrate a municipal custom, policy, or usage that would justify municipal liability") (citations omitted). "Here, there is not enough factual material in the [Amended] Complaint for the court to reasonably infer that the police misconduct [Plaintiff] alleges was the result of anything other than the individual acts of the arresting officers." *Simms v. The City of New York*, No. 10-CV-3420 NGG RML, 2011 WL 4543051, at *2 (E.D.N.Y. Sept. 28, 2011). Sherman's allegations stem from a single incident: his arrest and transport on September 29, 2012. The Amended Complaint does not contain allegations that any other arrestees have been injured as a result of being transported in the smaller police vehicles. Sherman's Amended Complaint, which "outline[s] a single, detached incident of misconduct by a few non-policy level officers, in no way suggests a deliberate choice by municipal policymakers to turn a blind eye to unconstitutional conduct." *Abreu v. City of New York*, 657 F. Supp. 2d 357, 361 (E.D.N.Y. 2009). Thus, Sherman fails to plausibly state a claim that the Town's use of smaller police vehicles constitutes a custom or practice of unconstitutional conduct.

V.     CONCLUSION

For the reasons set forth above, the Court GRANTS Defendants' motion and dismisses Count Two of the Amended Complaint. The case shall proceed as to Count One.

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated:       Hartford, Connecticut
             January 12, 2016