UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MARK S. SHERMAN,<br>    Plaintiff,<br><br>v.<br><br>JAMES A. PLATOSH and<br>BRYAN F. SEMBERSKY,<br>    Defendants. | No. 3:15-cv-352 (MPS) |

**RULING ON MOTION FOR SUMMARY JUDGMENT**

Plaintiff Mark Sherman brings this case against Vernon Police Department officers James Platosh and Bryan Sembersky under 42 U.S.C. § 1983 for use of excessive force in violation of the Fourth Amendment. (ECF No. 24.) Mr. Sherman claims that the defendants arrested him and verbally compelled him to enter a too-small police cruiser while he was in handcuffs, causing him pain and injuries. On January 12, 2016, I dismissed the claims against the defendants in their official capacities. (ECF No. 33.) The defendants have now moved for summary judgment on the remaining individual capacity claims. (ECF No. 38.) As no reasonable juror could conclude that defendants used excessive force in light of the undisputed facts, I GRANT the defendants' motion and DISMISS the case.

    **I.    Facts**

The following facts are taken from the parties' Local Rule 56(a) Statements and the documents cited therein. *See* Defendants' Local Rule 56(a)(1) Statement, ECF No. 38-2 ("Def.'s LRS"); Plaintiff's Local Rule 56(a)(2) Statement, ECF No. 39-1 ("Pl.'s LRS"). Facts are undisputed unless otherwise stated.

On September 29, 2012, after finishing a ten-hour work day, Mr. Sherman went to the Azteca restaurant in Manchester and drank three margaritas without eating. (Def.'s LRS ¶ 3; Pl.'s LRS ¶ 3; ECF No. 38-3 at 3-4.) He then began to drive home. (*Id.*)

Officer Platosh pulled Mr. Sherman over and approached the driver's side window. (Def.'s LRS ¶¶ 6-7; Pl.'s LRS ¶¶ 6-7.) He observed that Mr. Sherman had bloodshot eyes, slurred speech, and alcohol on his breath. (*Id.* ¶ 7.) Mr. Sherman stated that he had been drinking that evening, and he was not able to recite the alphabet, count backwards, or pass a field sobriety test. (*Id.* ¶¶ 8-9, 11-12.) During this time, Officer Sembersky arrived on the scene. (*Id.* ¶ 10.) Officer Platosh told Mr. Sherman that he was under arrest, and handcuffed his arms behind his back, checking the handcuffs for proper fit. (*Id.* ¶ 13.) At that point, Mr. Sherman did not complain about the handcuffs or mention any pain. (*Id.* ¶ 14.)

The defendants then told Mr. Sherman to get into the backseat of Officer Platosh's small-sized police cruiser. (Def.'s LRS ¶ 15; Pl.'s LRS ¶¶ 15, B.4.) According to the defendants, Officer Sembersky instructed Mr. Sherman on how properly to enter the cruiser, and Mr. Sherman ignored those instructions. (Def.'s LRS ¶¶ 16-17.) Mr. Sherman does not recall receiving any such instructions. (Pl.'s LRS ¶¶ 16-17; ECF No. 38-3 at 32.) Mr. Sherman, who is over six feet tall and weighs 260 pounds, claims that the back seat of the non-standard police cruiser was obviously too small for him, with plastic seats and a large hump in the center. (Pl.'s LRS ¶¶ 3-4.) He attempted to place his left foot in the backseat but had trouble, and told the defendants he would not fit. (Def.'s LRS ¶ 18; Pl.'s LRS ¶ 18.) Officer Sembersky responded, "Get in, you'll fit," in a manner that Mr. Sherman describes as "[v]ery strict[]." (*Id.* ¶ 18; ECF No. 38-3 at 15.) Mr. Sherman then attempted to place his foot in a second time, again had trouble, and told the defendants that he would not fit. (*Id.*) Officer Sembersky repeated, "Get in, you'll fit." (*Id.*) According to Mr.

Sherman, "[a]t that time I was feeling quite intimidated and thought I'll just comply to comply." (ECF No. 38-3 at 15.) Mr. Sherman entered the backseat of the vehicle without any assistance or use of any force, and the defendants closed the door behind him. (Def.'s LRS ¶ 19; Pl.'s LRS ¶ 19.)

According to Mr. Sherman, after he entered the vehicle, he was on his back with the handcuffs pressed against the hard hump in the middle of the back seat, and "the pain was off the charts, it was worse than broken ribs or the dislocated shoulder and the pain just got worse." (Pl.'s LRS ¶ B.6; ECF No. 38-3 at 17.) He began to scream in pain. (Def.'s LRS ¶ 20; Pl.'s LRS ¶ 20.) Defendants claim, and Mr. Sherman disputes, that Officer Sembersky tried to explain how to change position to avoid sitting on his wrists. (*Id.* ¶ 21.)

However, the parties agree that the defendants assisted Mr. Sherman out of the vehicle within 15 to 30 seconds of his entering it. (*Id.* ¶¶ 22, 24.) The defendants had Mr. Sherman sit cross-legged outside the vehicle, removed the handcuffs, and replaced them with two pairs of handcuffs. (*Id.* ¶¶ 22-25.) Mr. Sherman did not find "anything inappropriate" about the way the defendants assisted him out of the small cruiser. (*Id.* ¶ 23; ECF No. 38-3 at 23.) The defendants then moved Mr. Sherman into the backseat of Officer Sembersky's standard-sized police cruiser and transported him to the station, where he was issued a misdemeanor summons for operating under the influence and failing to give a proper signal. (Def.'s LRS ¶¶ 26-27; Pl.'s LRS ¶¶ 26-27.) The Vernon Police Department later conducted an internal affairs investigation into the incident. (*Id.* ¶ 30.)

Mr. Sherman claims that as a result of the incident, he has suffered serious and permanent physical injuries to his wrist. (Pl.'s LRS ¶ B.9.)

## II. Legal Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists." *Goenaga v. Mar. of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995). An issue of fact is "material" if it "might affect the outcome of the suit under the governing law." *Konikoff v. Prudential Ins. Co. of America*, 234 F.3d 92, 97 (2d Cir. 2000) (citation and quotation marks omitted). "A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006) (citation and quotation marks omitted). On summary judgment, a court must "construe the facts in the light most favorable to the nonmoving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Caronia v. Philip Morris USA, Inc.*, 715 F.3d 417, 427 (2d Cir. 2013) (citation and quotation marks omitted). However, "conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." *Kulak v. City of N.Y.*, 88 F.3d 63, 71 (2d Cir. 1996).

## III. Discussion

Mr. Sherman argues that the defendants used unreasonable force in violation of the Fourth Amendment when they ordered him to enter the backseat of a police cruiser that was obviously too small for him, while he was in handcuffs. (ECF No. 39.) No reasonable juror could so conclude on this record.

"The Fourth Amendment protects against the use of excessive force by police officers in carrying out an arrest." *Thomas v. Roach*, 165 F.3d 137, 143 (2d Cir. 1999). "When determining whether police officers have employed excessive force in the arrest context… courts should

examine whether the use of force is objectively unreasonable in light of the facts and circumstances confronting them, without regard to the officers' underlying intent or motivation.'" *Jones v. Parmley*, 465 F.3d 46, 61 (2d Cir. 2006) (citation, quotation marks, and alteration omitted). Courts must make "allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham v. Connor*, 490 U.S. 386, 397 (1989). "Given the fact-specific nature of the inquiry, granting summary judgment against a plaintiff on an excessive force claim is not appropriate unless no reasonable factfinder could conclude that the officers' conduct was objectively unreasonable." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 123 (2d Cir. 2004).

It is unclear whether a claim of unreasonable force can succeed in the Second Circuit without physical contact. *See Marceline v. Delgado*, 2011 WL 2531081, at *8 (D. Conn. June 23, 2011) ("[C]ourts within the Second Circuit have been reluctant to find an excessive force claim where there is no physical contact present. However, other circuits have recognized excessive-force claims in the absence of physical contact, particularly in cases where, as here, there were allegations that officers unreasonably drew their firearms." (internal citation omitted)); *Easton v. City of New York*, 2009 WL 1767725, at *4 n. 5 (E.D.N.Y. June 23, 2009) (while "other circuits have occasionally recognized excessive force claims even where no physical contact occurred, such as where officers pointed guns at an arrestee....[,] [t]he Second Circuit has never before recognized such a claim.").

But even assuming physical contact were not required as a general matter, no reasonable factfinder could find defendants' conduct in this case to be "objectively unreasonable." Construed in the light most favorable to Mr. Sherman, the defendants arrested him with clear signs of drunk

5

driving, and ordered him to enter a police cruiser that was too small for him over his objections.[1] Mr. Sherman acknowledges that he entered the cruiser without any physical contact from the defendants, and that he was in the car for only 15 to 30 seconds. (Pl.'s LRS ¶¶ 19, 24.) He also acknowledges that the defendants responded to his screams of pain within 15 to 30 seconds, by assisting him out of the vehicle and removing the handcuffs. (*Id.* ¶¶ 22-25.) A "plaintiff's claim [can] survive summary judgment on allegations that, during the course of an arrest, a police officer twisted her arm, 'yanked' her, and threw her up against a car." *Maxwell v. City of N.Y.*, 380 F.3d 106, 108 (2d Cir. 2004) (citation omitted). But "the force used by a defendant must be more than *de minimis* in order for a plaintiff's claim to be actionable." *Bell v. Chemung Cty.*, 2006 WL 839413, at *3 (W.D.N.Y. Mar. 27, 2006) (granting summary judgment where officer pushed and pulled the plaintiff into the back seat of the car). "Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396.

In short, "it is clear that the force used by the officers—here no force—was objectively reasonable under the circumstances." *Pelt v. City of N.Y.*, 2013 WL 4647500, at *14 (E.D.N.Y. Aug. 28, 2013) (citation and quotation marks omitted).

---

[1] Mr. Sherman does not argue that the decision to handcuff him was itself unreasonable. And there is no evidence that it was, particularly in light of the undisputed fact that the defendants checked for a proper fit and removed the handcuffs as soon as Mr. Sherman complained of pain or discomfort. *See Lynch ex rel. Lynch v. City of Mount Vernon*, 567 F. Supp. 2d 459, 468 (S.D.N.Y. 2008) ("In evaluating the reasonableness of handcuffing, a Court is to consider evidence that: 1) the handcuffs were unreasonably tight; 2) the defendants ignored the plaintiff s pleas that the handcuffs were too tight; and 3) the degree of injury to the wrists." (citation, quotation marks, and alterations omitted)).

Because Mr. Sherman's excessive force claim fails as a matter of law, I need not consider the defendants' qualified immunity defense. I note, however, that *even if* the conduct here rose to the level of unreasonable force, "the very uncertainty surrounding this question [of whether force can exist without physical contact] entitles the defendant to qualified immunity." *Snoussi v. Bivona*, 2008 WL 3992157, at *6 (E.D.N.Y. Aug. 22, 2008).

### IV.   Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment (ECF No. 38) is GRANTED. The case is DISMISSED. The Clerk is directed to close the case.

IT IS SO ORDERED.

/s/

Michael P. Shea, U.S.D.J.

Dated:   Hartford, Connecticut
         March 13, 2017